BENCOE EXPORTING & IMPORTING CO., Inc., v. ERIE CITY IRON WORKS et al.

(Circuit Court of Appeals, Second Circuit. March 6, 1922.)

No. 169

1. Torts ⬤═⟿26(1)—Complaint held not to state cause of action for preventing performance of contract.

A complaint alleging that illegal acts ·of defendant were erroneously attributed to plaintiff by government agents, in consequence of which plaintiff was refused a license to export certain merchandise, the sale of which it had contracted, *held* not to state a cause of action against defendant for damages, in the absence of any allegation that defendant communicated with the government agents or in any way caused or contributed to their error.

2. Sales ⬤═⟿273(3)—Contract for purchase of boiler plates "for export" to Japan held to entitle purchaser to plates legally exportable.

A contract by plaintiff for the purchase of boiler plates for export to Japan *held* to entitle it to plates which could be legally exported, and a complaint alleging that defendants, with knowledge of the contract, fraudulently obtained, and delivered under the contract, and received payment for plates, exportation of which was prohibited by government order, *held* to state a cause of action for damages.

In Error to the District Court of the United States for the Southern District of New York.

Action at law by the Bencoe Exporting & Importing Company, Inc., against the Erie City Iron Works and the John O'Brien Boiler Works Company. Judgment for defendants, and plaintiff brings error. Affirmed in part, and reversed in part.

Writ of error to judgment for defendant based on a general demurrer to the complaint. The complaint contains two causes of action. The first is as follows, stating it according to its legal effect:

In July, 1917, plaintiff took an order from a Japanese corporation for 300 tons of boiler plates, to be shipped to said company in Yokohama. In order to get the plates, plaintiff made a contract with Ætna, etc., Company, whereby that company agreed to sell and plaintiff agreed to buy and pay for "300 tons of boiler plates for export to Japan." The price as between plaintiff and Ætna was so much a pound "f. o. b. mill, Pittsburgh base, * * * shipping instructions to be given later."

Plaintiff then procured from Equitable Trust Company and delivered to Ætna Company "irrevocable letters of credit," addressed to Ætna Company and available up to December 31, 1917, by sight draft with bills of lading and invoices attached. Thereafter Ætna Company for the purpose of in part fulfilling its contract with plaintiff, further contracted with defendant Erie Works for 200 tons of boiler plates similar to those described in the contract between plaintiff and Ætna Company, and Erie Works accepted this contract knowing that the said 200 tons of plates "were for export." Payment to Erie Works was provided for by assigning enough of the aforesaid letters of credit issued by Equitable Trust Company to the Coal & Iron National Bank, by reason of which assignment said bank issued to defendant Erie Works another letter of credit, enabling said defendant to obtain payment for the 200 tons of boiler plates by drawing a sight draft with bills of lading and invoices attached showing shipment at the proper time.

Before any of the foregoing occurrences the defendant O'Brien Company had ordered from the Illinois Steel Company a large quantity of boiler plates, but the Illinois Company's acceptance of this order was in terms "subject to

diversion by the requirements of the United States government." A large part of this order remained undelivered to O'Brien Company in July, 1917. At the same time the two defendants O'Brien Company and Erie Works had a contract with each other, by which the latter was to procure from the former 500 tons of the boiler plates so as aforesaid obtainable from Illinois Steel Company, and this contract between the defendants was "contrary to, and known by both defendants to be contrary to, the agreement between O'Brien Company and Illinois Steel Company," because it was a part of O'Brien's agreement with Illinois Steel Company that the plates to be made by the latter were to be used in the construction of boilers by O'Brien Company itself as a governmental agency.

On or after August 2, 1917, the President of the United States, through proper officers, "notified and directed the Illinois Steel Company" that no boiler plates should be delivered for export after certain dates fixed by a proclamation of the President, wherefore it then became illegal for Illinois Steel Company to deliver for export any portion of the order of defendant O'Brien Company then remaining unfulfilled. Thereafter it is asserted that the defendants conspired to obtain 200 tons of plates from Illinois Steel Company under the latter's contract with O'Brien Company, by concealing the fact that they were intended to be shipped in fulfillment of an export contract and were not to be used by O'Brien Company itself in domestically manufacturing boilers; and defendants, having by these false representations and equally fraudulent suppressions obtained the plates, shipped the same to the order of defendant Erie Works in the form required by the irrevocable letter of credit written by Coal & Iron Bank. The plates, having been thus paid for, were delivered to plaintiff; but, owing to the governmental restrictions above referred to, they could not be exported, nor used to fulfill plaintiff's contract with the Japanese corporation, to the plaintiff's loss and damage in the sum of upwards of $45,000.

The substance of the second cause of action is that on and after October 2, 1917, the plaintiff sold for export divers articles which under the regulations then existing were exportable, providing a license therefor were obtained pursuant to the orders of the President of the United States. The complaint continues that the acts of defendants set forth in the first cause of action, "in procuring by fraud the manufacture and shipment of the boiler plates" aforesaid, were discovered "by government agents and reported to the Department of Commerce and by the latter attributed to the plaintiff," whereby said Department (acting for the President) "refused all licenses to plaintiff, whereby it lost" the sales aforesaid, to its damage in the sum of $50,000.

To the judgment dismissing both causes of action on demurrer plaintiff brought this writ.

Wellman, Smyth & Scofield, of New York City (Herbert C. Smyth and Ralph W. Thomas, both of New York City, of counsel), for plaintiff in error.

Geo. C. Franciscus and John A. Thompson, both of New York City, for defendants in error.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] We are of opinion that the court below rightly sustained demurrer to the second cause of action. The substance of this part of the complaint is that certain governmental agents, who had power to give or withhold export licenses during the late war, erroneously or stupidly imputed to plaintiff the wrongful deeds of defendants, and therefore punished plaintiff by preventing the procuring and/or fulfillment of export contracts. Let the defendants be assumed as guilty of all the wrongdoing charged, yet (1) it is nowhere asserted that defendants ever said or suggested to any one, much less the agents of the United States, that plain-

tiff had shared in or consented to the defendants' acts; and (2) especially, in the absence of any allegation of communication by defendants to the agents of the United States, it is not seen how defendants can be held responsible for the uninspired, and on the face of complaint inexcusable, mistake or stupidity of said governmental officers.

[2] The first cause of action is novel, and most interesting. There can be no doubt of the existence of the legal principle asserted as applicable to new and singular facts, viz. that when fraud is committed, and damage is thereby occasioned, a cause of action results to him who is damaged. Rice v. Manley, 66 N. Y. 82, 23 Am. Rep. 30; Benton v. Pratt, 2 Wend. (N. Y.) 385, 20 Am. Dec. 623; Parley v. Freeman, 3 T. R. 51. But we find it impossible profitably to discuss the application of the principle, because we are convinced that the court below too narrowly interpreted the language of the complaint, and what the facts will be when evidence is adduced cannot be certainly stated.

Every case, though heard on demurrer, must rest decision on facts: but the facts on demurrer often, if not usually, consist of inferences from the pleader's words, and such inferences are often of small value, when compared with the results of sworn evidence. Reading the complaint benevolently, as must be done on demurrer, we find plaintiff asserting that what he bought were plates "for export to Japan," and the knowledge that this·was plaintiff's bargain, was passed on from Ætna Company to Erie Works and O'Brien.

Decision below, however, was rested on, and grew out of, a holding or finding that the "reference to export" was no more than a "description." From this holding logically flowed a reading of the pleaded contract as requiring no more than the delivery to plaintiff in the United States of plates physically complying with requirements as to quality, size, etc. Under such a contract, it would and did with equal logic result that, since plaintiff had gotten plates physically acceptable, he had no cause of complaint, for no fraud had been worked on him by any one, and (as was held) he got "exactly what he had contracted for." The fact that plaintiff's goods, exactly as contracted for, had been procured for him by frauds or falsehoods worked on Illinois Steel Company and the United States, was quite immaterial. In terms of the undoubted rule of law, there was no concurrence of fraud and damage to the hurt of plaintiff.

But we cannot read the complaint as making the exportable quality or attribute of these boiler plates no more than descriptive. Plaintiff is entitled to the reading we prefer, which is that it was part of the original bargain between plaintiff and Ætna Company, and part of the fractional bargain between Ætna Company and Erie Works, and something communicated to and known by O'Brien, that plaintiff was not getting what he was entitled to, and was not obtaining fulfillment of his contract, unless the plates tendered him had not only the stipulated physical qualities, but possessed also the political or legal and additional quality or attribute of exportability.

Whether there ever was such a singular and burdensome contract we do not know; but we hold it clear that an agreement of that kind is possible, and would be legal, and further that it is such a contract that

plaintiff has with reasonable clarity alleged. Therefore he is entitled to an opportunity of proving it before a jury. No further holding is now necessary. To lay down rules which now seem applicable to possible results of evidence only makes confusion.

It is ordered that the judgment on review be affirmed as to the second cause of action, and reversed as to the first; that there be no costs of this court, and the case be remanded with directions to require the defendants to answer the first cause of action within a time to be fixed by the District Court.